# EXHIBIT A

1  JAMES T. HANNINK (131747)
   jhannink@sdlaw.com
2  ZACH P. DOSTART (255071)
   zdostart@sdlaw.com
3  DOSTART HANNINK LLP
   4225 Executive Square, Suite 600
4  La Jolla, California 92037-1484
   Tel:  858-623-4200
5  Fax:  858-623-4299

6  Attorneys for Plaintiff

7

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/16/2023 11:01 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By G. Carini, Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10

11  ANTONIO FERNANDEZ,                    CASE NO. 23STCV28134
    individually and on behalf of all others
12  similarly situated,                   CLASS ACTION

13              Plaintiff,                COMPLAINT FOR:

14  vs.                                   (1) FALSE ADVERTISING (BASED ON
                                          VIOLATION OF THE CALIFORNIA
15                                        AUTOMATIC RENEWAL LAW)
    AVANQUEST NORTH AMERICA LLC,          [Bus. & Prof. Code, §§ 17535 et seq. & 17600];
16  a California limited liability company; and   and
    DOES 1-50, inclusive,
17                                        (2) UNFAIR COMPETITION
18              Defendants.               [Bus. & Prof. Code, § 17200 et seq.]

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.     This class action complaint alleges that Avanquest North America LLC ("Avanquest") violates California law in connection with the advertising and sale of computer software. In particular, Avanquest offers software products for what is advertised to be a fixed price for a limited period of time, whereas upon receipt of an order, Avanquest enrolls the consumer in a subscription program that will automatically renew from one period to the next and results in subsequent charges to the consumer's credit card, debit card, or third-party payment account. In so doing, Avanquest fails to provide the clear and conspicuous disclosures mandated by California law; charges consumers for automatic renewal subscriptions without first obtaining the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosure of required automatic renewal offer terms; fails to provide consumers with an acknowledgment mandated by California law; and fails to provide an online and/or cost-effective, timely, and easy-to-use mechanism for cancellation. Such conduct constitutes false advertising, based on violation of the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.), and it also violates the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

2.     This action seeks restitution for Plaintiff and other affected California consumers, and a public injunction for the benefit of the People of the State of California.

**THE PARTIES**

3.     Plaintiff Antonio Fernandez ("Plaintiff") is an individual residing in Los Angeles County, California.

4.     Avanquest North America LLC ("Avanquest") is a California limited liability company with its principal place of business in Los Angeles County, California. Avanquest does business in Los Angeles County, throughout California, and elsewhere, including the marketing and sale of computer software.

5.     Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with the named defendant in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant,

CLASS ACTION COMPLAINT

1  or as the principal, agent, successor, alter ego, or co-conspirator of or with one or more of the other

2  defendants. For ease of reference, Plaintiff will refer to the named defendant and the DOE

3  defendants collectively as "Defendants."

4  **VENUE**

5  6.    Venue is proper in this judicial district because Avanquest conducts business in Los

6  Angeles County, has its principal office in Los Angeles County, and a substantial part of the events

7  giving rise to this action occurred in Los Angeles County.

8  **SUMMARY OF APPLICABLE LAW**

9  **Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.)**

10  7.    In 2009, the California Legislature passed Senate Bill 340, which took effect on

11  December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code,

12  § 17600 et seq. ("ARL").) (Unless otherwise specified, all statutory references in this Complaint are

13  to the California Business and Professions Code.) SB 340 was introduced because:

14  It has become increasingly common for consumers to complain about unwanted
charges on their credit cards for products or services that the consumer did not

15  explicitly request or know they were agreeing to. Consumers report they believed
they were making a one-time purchase of a product, only to receive continued

16  shipments of the product and charges on their credit card. These unforeseen charges
are often the result of agreements enumerated in the "fine print" on an order or

17  advertisement that the consumer responded to.

18  (See Exhibit 1 at p. 4.)

19  8.    The Assembly Committee on Judiciary provided the following background for the

20  legislation:

21  This non-controversial bill, which received a unanimous vote on the Senate floor,
seeks to protect consumers from unwittingly consenting to "automatic renewals" of

22  subscription orders or other "continuous service" offers. According to the author and
supporters, consumers are often charged for renewal purchases without their consent

23  or knowledge. For example, consumers sometimes find that a magazine subscription
renewal appears on a credit card statement even though they never agreed to a

24  renewal.

25  (See Exhibit 2 at p. 8.)

26  9.    The ARL seeks to ensure that, before there can be a legally-binding automatic

27  renewal or continuous service arrangement, there must first be adequate disclosure of certain terms

28  and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful

3

CLASS ACTION COMPLAINT

for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

       a.     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer. (Bus. & Prof. Code, § 17602(a)(1).) For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code, § 17601(c).) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any. (Bus. & Prof. Code, § 17601(b).)

       b.     Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code, § 17602(a)(2).)

       c.     Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel. (Bus. & Prof. Code, § 17602(a)(3).)

/ / /

/ / /

CLASS ACTION COMPLAINT

10.    Section 17602(c) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation.

11.    Section 17602(d) requires that any business that allows a consumer in California to accept an automatic renewal offer or a continuous service offer online must provide a method by which the consumer can "terminate the automatic renewal or continuous service exclusively online, at will, and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately." Specifically, the business must "provide a method of termination that is online in the form of either of the following: (A) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings. (B) By an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information." Section 17602(d) further provides that a consumer who is unwilling or unable to enter account information or otherwise authenticate online must not be precluded from authenticating or terminating the automatic renewal or continuous service offline using another method pursuant to § 17602(c), i.e., a cost-effective, timely, and easy-to-use mechanism for cancellation.

12.    Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, § 17535. (Bus. & Prof. Code, § 17604(a).) The remedies of the FAL are cumulative to each other and to the remedies available under all other laws of California. (Bus. & Prof. Code, § 17534.5.)

13.    If a business sends any goods, wares, merchandise, or products to a consumer under an automatic renewal or continuous service agreement without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, such material is deemed to be an "unconditional gift" to the consumer. (Bus. & Prof. Code, § 17603.)

14.    In this Complaint, references to an "automatic renewal" arrangement encompass a "continuous service" arrangement, unless otherwise specified.

1       **Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.)**

2       15.     The Unfair Competition Law ("UCL") defines unfair competition as including any

3 unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading

4 advertising; and any act of false advertising. (Bus. & Prof. Code, § 17200.)

5       16.     Violation of the UCL gives rise to restitution and injunctive relief. (Bus. & Prof.

6 Code, § 17203.) The remedies of the UCL are cumulative to each other and to the remedies available

7 under all other laws of California. (Bus. & Prof. Code, § 17205.)

8               **OVERVIEW OF AVANQUEST'S BUSINESS PRACTICES**

9       17.     Avanquest advertises and sells computer software, including the software program

10 entitled inPixio Photo Studio, as well as a number of other programs. Avanquest offers and sells its

11 software products online through several websites, including but not limited to

12 https://www.avanquest.com/USA and https://www.inpixio.com. Consumers who purchase an

13 Avanquest software product go through a purchase sequence established by Avanquest.

14 / / /

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

CLASS ACTION COMPLAINT

18.    For example, for the software program inPixio Photo Studio, the consumer is asked to select one of three versions ("Standard," "Pro," or "Ultimate"), for a one-year term. After selecting a version, a consumer is shown the following screen for entry of payment details (here, the "Pro" version has been selected, reflecting a price of $39.99 for one year):



A copy of that screen (the "Payment Page") is attached hereto as Exhibit 3.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

19.     After the consumer fills in the payment details and submits payment, the consumer is presented with a "Purchase Summary" screen, an exemplar of which (with appropriate redaction of personal information) is set forth below and is attached hereto as Exhibit 4:



20.     After the consumer submits payment, the consumer is also sent a "Purchase Confirmation" email, an exemplar of which (with appropriate redaction of personal information) is shown below and attached hereto as Exhibit 5:

/ / /

/ / /

8

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    21.    When a consumer fills in the Payment Page (Exhibit 3), the left side of the screen

23  has a section consisting of tiny type that includes one or more boxes that are ***prechecked by***

24  ***Avanquest***. By means of those prechecked boxes, Avanquest includes one or more add-on charges

25  in the order. For example, in Exhibit 3, an add-on charge of $9.99 is included with the inPixio Photo

26  Studio order for "Edit photos on up to 5 PCs! – 1 Year." By prechecking one or more boxes and by

27  utilizing tiny and faint type, Avanquest adds charges for items the consumer did not affirmatively

28  select.

CLASS ACTION COMPLAINT

22.     Although Avanquest software is offered and sold as a fixed price for a limited term (as illustrated in Exhibit 3), Avanquest unilaterally enrolls the consumer in a subscription that will automatically renew from one period to the next. In so doing, Avanquest fails to provide the "clear and conspicuous" disclosure that California law requires for creation of a valid automatic renewal or continuous service arrangement.

23.     Specifically, as reflected on the Payment Page for inPixio Photo Studio, the only mention of renewal appears in two fine-print paragraphs set forth in tiny and faint type near the bottom of the page, beneath and outside of the blue box that contains the white fields for entry of payment information and the large and colorful PROCESS PAYMENT button. That does not constitute a "clear and conspicuous" disclosure within the meaning of § 17601(c) because, without limitation, the two fine-print paragraphs are set forth in a type that is not larger than the surrounding text (indeed, the type is smaller than surrounding text); it is not presented in a contrasting type, font, or color to surrounding text of the same size (indeed, it is presented in faint grey type so as to provide minimal contrast, and the type is smaller than surrounding text); and it is not set off from surrounding text of the same size by symbols or other marks in a manner that would clearly call attention to the language (indeed, there are no symbols or other marks to set off those paragraphs, and the type is smaller than surrounding text). Moreover, those two fine-print paragraphs do not include all of the "automatic renewal offer terms" required by sections 17601(b) and 17602.

24.     For similar reasons, Avanquest fails to provide an acknowledgment that complies with California law. Specifically, as illustrated in the "Purchase Confirmation" email for the inPixio Photo Studio software (Exhibit 5), there is no mention of automatic renewal. Rather, in tiny type, the top portion of the email mentions that the product "rebills" yearly. Near the bottom of the email, also in tiny type, there is a mention of "subscription management options," but no mention whatsoever of automatic renewal. Further, the only telephone number included in the email is a telephone number that can be used to "activate your software immediately." There is no telephone number, email address, or other information that could constitute a "cost-effective, timely, or easy-to-use" mechanism for cancellation, as required by § 17602(c).

CLASS ACTION COMPLAINT

**PLAINTIFF'S TRANSACTION**

25.    On April 21, 2022, Plaintiff purchased the "inPixio Photo Studio Pro – 1 Year" software. On information and belief, Plaintiff went through a purchase sequence that in all material respects was the same as described above and reflected in Exhibits 3-5. The amount of $39.98 was charged to Plaintiff's PayPal account. Plaintiff believed this purchase was a one-time transaction.

26.    The following year, on April 21, 2023, Defendants posted a charge of $39.98 to Plaintiff's PayPal account, purportedly for renewal of InPixio Photo Studio Pro and "Edit photos on up to 5 PCs! – 1 Year!" Plaintiff did not authorize or consent to that charge.

27.    Upon discovering that charge, Plaintiff went online and conducted a live chat with an Avanquest agent. Plaintiff requested cancellation of the subscription and a full refund of the $39.98 unauthorized charge. The Avanquest agent denied the refund request and did not cancel Plaintiff's (purported) subscription. Plaintiff thereafter contacted PayPal to cancel any renewal and prevent any further charges by Avanquest.

28.    When Plaintiff made the initial purchase in April 2022, he was not aware that Defendants would contend he had given consent to be enrolled in an automatic renewal subscription and for Defendants to post subsequent charges to his PayPal account.

29.    If Plaintiff had known that Defendants were going to enroll him in an automatically renewing subscription, Plaintiff would not have purchased any Avanquest software.

30.    Plaintiff received no value in return for the renewal charge.

31.    Plaintiff has no intention to purchase any Avanquest product in the future.

**EXPERIENCES REPORTED BY OTHER CONSUMERS**

32.    It turns out that Plaintiff's experience is not an isolated instance. In fact, many consumers report that they were enrolled in and charged for an Avanquest subscription without their knowledge or consent. Many consumers also report that when they discovered the charges and sought to cancel, they found no way to cancel by telephone and Avanquest made it difficult to cancel through other means. Customer reviews and complaints of Avanquest posted on online, including the Better Business Bureau ("BBB") website, indicate that many consumers have been affected by Defendants' business practices.

CLASS ACTION COMPLAINT

33.    Illustrative customer complaints and reviews posted on the BBB website (<https://www.bbb.org/us/ca/riverside/profile/computer-hardware/avanquest-software-1066-1002280> [as of November 15, 2023]) include the following (copied verbatim):

**Steven S. (Aug. 17, 2023).** I tried it one time never used it again not even on my computer anymore I find out 3 years later they've been charging me every year 20 some dollars now all of a sudden this year it's almost $84 I want my money back I don't even use this product They get a -1000 stars from me Had to get a hold of PayPal to make sure they cannot Bill me anymore I still want my money back

A true and correct printout of that complaint is attached as Exhibit 6.

**Problems with Product/Service. (June 5, 2023).** I have not authorize any withdrawal from my bank account to Avanquest Software. They have charged my account $97.00! I demand a refund!

A true and correct printout of that complaint is attached as Exhibit 7.

**Problems with Product/Service. (Mar. 17, 2023).** I purchased photo software from their iNPixio company 02/25/2023, Confirmation Number: U*****Z4, Purchase Date: 2/25/2023 8:26:13 PM, Total: $45.99. Then a few days later I received a notice that they had a upgrade for the software that I had purchased, claiming that the upgrade would make it Much Faster and Better. So I decided to give it a try. So, on Purchase Date: 3/9/2023 4:25:44 PM, Confirmation Number: U******D, Total: $49.98 which was suppose to only be $39.99 but they added on a $9.99 fee so I could load the software on addition** computers. As soon as I noticed the overcharge I requested a refund for the $9.99 which they ignored. They then were pushing me to agree to pay more money for future use of product. I told then, before I spend more money I'm going to try the update to see if it works any better than my origin** purchase. Well, the update didn't make any improvement and I requested a refund for the $49.98. Their customer response was "We'll Get Back to you within 24hrs" However they didn't and I keep asking and they keep ignoring my request. These people are SCAMMERS. I want my REFUND!!! I'm attaching a document showing their delay tactics. I'm a 75 year old senior and can't afford to lose money like this. Please Help. Sincerely ** ******

A true and correct printout of that complaint is attached as Exhibit 8.

**Problems with Product/Service. (Aug. 13, 2022).** date 8/10.2022 AVG-software charge 29.99 and 39.99 on same date for software I didnot want. and it says reoccuring charge. I would like to get my money back if possible and stop this crap from happening again. I see you have helped someone else with this same issue. Recurring Withdr avq-software.com 188-******** VA Date 08/10/21 080682 5817 ACCOUNT CHECKING ACCT *0***-0071 CATEGORY Uncategorized AMOUNT - $39.98 Next one.... Recurring Withdr avq-software.com 188-******** VA Date 08/10/22 034153 5817 ACCOUNT CHECKING ACCT *0***-0071 CATEGORY Uncategorized AMOUNT - $29.99 Thanks for any help you can do. ******* ****** *********2

A true and correct printout of that complaint is attached as Exhibit 9.

CLASS ACTION COMPLAINT

**John I. (July 17, 2022).** This company does not even deserve one star. The software does not work as described. Even though, the company boasts of a policy of easy refund if the software does not work; once your money gets into their pocket, you cannot get it back. Trying to contact this company either by their own given email or by their telephone number is like going into a rabbit hole with a warren of interconnecting tracts. All the emails I sent to this company came back as daemon mails. All telephone calls for refund were being transferred from one person to the another until there is no more response. If this company does really exist, it must be a fraud. Time will catch up with it and it will financially disappear. My advice to would be customers; please avoid this company completely and do not let them steal your money. I do have all my receipts to prove what I am saying and I therefore challenge this company to contest my story and I will then post all the return daemon emails and the receipts of my purchases. **** ****** *** ***** ****** DR ** *****

A true and correct printout of that complaint is attached as Exhibit 10.

**Problems with Product/Service. (July 7, 2022).** July 7, 2022 AVQ Software charge 43.29 to my account. I need that money back. It was for inpixio and I know I cancelled that subscription last month. It was still showing active though. I know I cancelled it tonight and I want a refund.

A true and correct printout of that complaint is attached as Exhibit 11.

**Billing/Collection Issues. (July 2, 2022).** An ACH debit appeared as a transaction yesterday (07/01/2022) on my checking account record. The descriptor reads," POS PURCHASE avq-software.com 188-******** VA 00000*** ***763." The amount is $29.99. Quick online research showed this is some sort of subscription service with a shaky reputation. Since I was sick in bed yesterday and did nothing using the internet, I concluded this is some sort of scam. I've never heard of this company and certainly did not sign up for any service from them. I'm seeking an immediate refund.

A true and correct printout of that complaint is attached as Exhibit 12.

**Jeanie W. (June 3, 2022).** This software is a joke! Don't buy! On initial purchase it automatically renews and you get charged again within a few. Its impossible to apply for a refund because the form you complete promising to remove software goes nowhere -- the email address provided is bogus!

A true and correct printout of that complaint is attached as Exhibit 13.

**Billing/Collection Issues. (November 25, 2021).** I ordered and used InPixio product for a year. No longer needed or used the product. Item I didn't recognize showed up on Visa bill. Contacted Avanquest on November 7th 2021 to advise that I hadn't renewed or been advised of renewal. I was told that I had been notified before renewal. News to me. End result was that my contract was cancelled (I still have that email). I just got my new visa bill & it is on there again and now I can no longer seem to be able to contact this company!

A true and correct printout of that complaint is attached as Exhibit 14.

CLASS ACTION COMPLAINT

**Jan B. (Sept. 27, 2020).** Dealing with Avanquest has been a real nightmare. They put me in their software automatic renewal program without my knowledge or permission. I looked on my computer and I've never even ever downloaded any of their software programs. After about 10 requests and numerous phone calls to PayPal, my bank and Avanquest's 3 companies, I've almost given up ever getting a refund from Avanquest, iPixio or Upclick. To make matters worse, they automatically put me in their email spamming program when I first asked for a refund a month ago. So now I get unsolicited emails every day from one of their companies called Upclick, which is where they send you to in order to ask for a refund. I'm not mad. I just want to warn people about this company. If I ever get a refund from them, I will of course be happy to update this review :)

A true and correct printout of that complaint is attached as Exhibit 15.

34.    Illustrative customer complaints and reviews posted on the TrustPilot website (<https://www.trustpilot.com/review/www.avanquest.com> [as of November 15, 2023]) include the following (copied verbatim):

**J. Wright. Don't even buy this software. (June 3, 2022).** Don't even buy this software. Useless! It automatically signs you up for renewal and its impossible to get your money back. They act like it is an easy process completing a destruction form, but the email address is bogus and can't be delivered. So much for a refund

A true and correct printout of that complaint is attached as Exhibit 16.

**Meredith. Not happy. (Jan. 28, 2021).** Not happy, with service. They told me they would give a refund on a reoccurring charge then would not give it too me. They give no notice on their charges. They just bill.

A true and correct printout of that complaint is attached as Exhibit 17.

35.    Illustrative customer complaints and reviews posted on the PissedConsumer website (<https://avanquest.pissedconsumer.com/review.html> [as of November 15, 2023]) include the following (copied verbatim):

**Jaq. (May 8, 2023).** No ability to speak to a person; but perfectly able to take my money automatically

A true and correct printout of that complaint is attached as Exhibit 18.

**Sally. Cancel subscription. (Aug. 4, 2022).** Keep getting charged and have cancelled subscription. I need to talk to a customer service. Need help need help need help need help need hellp

A true and correct printout of that complaint is attached as Exhibit 19.

**CLASS ACTION ALLEGATIONS**

36.    Plaintiff brings this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of the following Class: "All individuals in California who, within the statute of limitations period, purchased an Avanquest software product and were enrolled in an automatic renewal subscription, limited to individuals who did not receive a full refund. Excluded from the Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned."

37.    <u>Ascertainability</u>. The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' marketing and advertising records, customer records, and billing records.

38.    <u>Common Questions of Fact or Law</u>. There are questions of fact or law that are common to the members of the Class, which predominate over individual issues. Common questions regarding the Class include, without limitation: (1) whether Defendants present all statutorily-mandated automatic renewal offer terms, within the meaning of § 17601(b); (2) whether Defendants present automatic renewal offer terms in a manner that is "clear and conspicuous," within the meaning of § 17601(c); (3) whether Defendants obtain consumers' affirmative consent to an agreement containing clear and conspicuous disclosure of automatic renewal offer terms before charging a credit card, debit card, or third-party payment account; (4) whether Defendants provide consumers with an acknowledgment that includes clear and conspicuous disclosure of all statutorily-mandated automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel; (5) whether Defendants provide a cost-effective, timely, and easy-to-use mechanism for cancellation; (6) Defendants' record-keeping practices; and (7) the appropriate remedies for Defendants' conduct.

39.    <u>Numerosity</u>. The Class is so numerous that joinder of all class members would be impracticable. Plaintiff is informed and believes and thereon alleges that the Class consists of at least 100 members.

40.    <u>Typicality and Adequacy</u>. Plaintiff's claims are typical of the claims of the other class members. Plaintiff alleges that Defendants enrolled Plaintiff and other class members in

15

1    automatic renewal or continuous service subscriptions without disclosing all automatic renewal

2    offer terms required by law, and without presenting such automatic renewal terms in the requisite

3    clear and conspicuous manner; charged Plaintiff's and class members' credit cards, debit cards, or

4    third-party payment accounts without first obtaining affirmative consent to an agreement containing

5    clear and conspicuous disclosure of all automatic renewal offer terms; failed to provide the

6    acknowledgment required by law; and failed to provide the requisite online and cost-effective,

7    timely, and easy-to-use mechanisms for cancellation as required by law. Plaintiff has no interest

8    adverse to the other class members. Plaintiff will fairly and adequately protect the interests of the

9    class members.

10    41.    <u>Superiority</u>. A class action is superior to other methods for resolving this controversy.

11    Because the amount of restitution to which each class member may be entitled is low in comparison

12    to the expense and burden of individual litigation, it would be impracticable for class members to

13    redress the wrongs done to them without a class action. Furthermore, on information and belief,

14    many class members do not know that their legal rights have been violated. Class certification would

15    also conserve judicial resources and avoid the possibility of inconsistent judgments. Prosecution of

16    separate actions by individual class members would create a risk of inconsistent or varying

17    adjudications with respect to individual class members, which would establish incompatible

18    standards of conduct for Defendants.

19    **FIRST CAUSE OF ACTION**

20    False Advertising (Based on Violation of the California Automatic Renewal Law)

21    (Bus. & Prof. Code, § 17600 et seq. & § 17535)

22    42.    Plaintiff incorporates the previous allegations as though set forth herein.

23    43.    During the applicable statute of limitations period, Defendants have enrolled Plaintiff

24    and other California consumers in automatic renewal subscriptions and have violated the ARL by,

25    among other things, (a) failing to present automatic renewal offer terms in a clear and conspicuous

26    manner before a subscription is fulfilled and in visual proximity to a request for consent to the offer,

27    in violation of § 17602(a)(1); (b) charging the consumer's credit card, debit card, or third-party

28    payment account for an automatic renewal without first obtaining the consumer's affirmative

16

consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3); and (d) failing to provide an online and cost-effective, timely, and easy-to-use mechanism for cancellation, in violation of § 17602(c) and (d).

44.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' violations of the ARL.

45.     Pursuant to Business and Professions Code § 17603 and § 17535, Plaintiff and class members are entitled to restitution of all amounts that Defendants charged to Plaintiff's and class members' credit cards, debit cards, or third-party payment accounts for automatic renewal subscriptions during the limitations period preceding the filing of this action and continuing until Defendants' statutory violations cease.

46.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17535, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## **SECOND CAUSE OF ACTION**

Violation of the California Unfair Competition Law

(Bus. & Prof. Code, § 17200 et seq.)

47.     Plaintiff incorporates the previous allegations as though fully set forth herein.

48.     The Unfair Competition Law defines unfair competition as including any unlawful, unfair or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under § 17500. (Bus. & Prof. Code, § 17200.)

49.     In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a

17

subscription or purchasing agreement is fulfilled and in visual proximity to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3); and (d) failing to provide an online and cost-effective, timely, and easy-to-use mechanism for cancellation, in violation of § 17602(c) and (d). Plaintiff reserves the right to identify other acts or omissions that constitute unlawful, unfair, or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

50.     Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

51.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

52.     Defendants' acts, omissions, nondisclosures, and statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

53.     Plaintiff has suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

54.     Pursuant to Business and Professions Code § 17203, Plaintiff and class members are entitled to restitution of all amounts that Defendants charged to Plaintiff's and class members' credit cards, debit cards, or third-party payment accounts for automatic renewal subscriptions during the limitations period preceding the filing of this action and continuing until Defendants' acts of unfair competition cease.

55.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein. Pursuant to Business and Professions Code § 17203, for the benefit of

18

the general public of the State of California, Plaintiff seeks a public injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

### **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Cause of Action:

1.    For restitution to Plaintiff and all class members;

2.    For a public injunction;

On the Second Cause of Action:

3.    For restitution to Plaintiff and all class members;

4.    For a public injunction;

On All Causes of Action:

5.    For reasonable attorneys' fees, pursuant to Code of Civil Procedure § 1021.5;

6.    For costs of suit;

7.    For pre-judgment interest; and

8.    For such other relief as the Court may deem just and proper.

Dated:  November 16, 2023          DOSTART HANNINK LLP

ZACH P. DOSTART
Attorneys for Plaintiff

CLASS ACTION COMPLAINT

Exhibit 1

**SENATE JUDICIARY COMMITTEE**
**Senator Ellen M. Corbett, Chair**
**2009-2010 Regular Session**

SB 340
Senator Yee
As Amended April 2, 2009
Hearing Date: April 14, 2009
Business and Professions Code
ADM:jd

(800) 666-1917

LEGISLATIVE INTENT SERVICE

## SUBJECT

Advertising:  Automatic Renewal Purchases

## DESCRIPTION

This bill would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis.  This bill would also require all marketing materials to clearly and conspicuously display a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism the customer could use for cancellation.

This bill would require the order form to clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement.

This bill would impose similar requirements for any automatic renewal offer made over the telephone or on an Internet Web page.

 (This analysis reflects author's amendments to be offered in committee.)

## BACKGROUND

Current consumer protection statutes do not address automatic renewal clauses or provisions in subscriptions or purchasing agreements.  Senate Bill 340 is intended to close this gap in the law.

When some businesses began using automatic renewals for subscriptions and purchase agreements for products and services, consumer complaints began to surface regarding those automatic renewals.  Consumers complained that they were unaware of and had

Exhibit 1
Page 1

not requested the automatic renewals until they either received a bill or a charge on
their credit card.

An example of this problem is illustrated by the Time, Inc. (Time) case.  After receiving
numerous consumer complaints, the Attorneys General of 23 states, including
California, launched an investigation into Time's automatic renewal subscription offers.
In 2006, the investigation resulted in a settlement agreement between the Attorneys
General and Time that includes a number of reforms to automatic renewals that Time
sends to their customers.  Those reforms include, among others, expanded disclosure
requirements and customers' affirmative consent to automatic renewals.  (*See* Comment
2 for details.)

## CHANGES TO EXISTING LAW

<u>Existing law</u>, the Unfair Competition Law (UCL), provides that unfair competition
means and includes any unlawful, unfair, or fraudulent business act or practice and
unfair, deceptive, untrue or misleading advertising, and any act prohibited by the False
Advertising Act (FAA).  (Bus. & Prof. Code Sec. 17200 et seq.)

<u>Existing law</u>, the FAA, includes the following:
• prohibits any person with the intent, directly or indirectly, to dispose of real or
  personal property, to perform services, or to make or disseminate or cause to be
  made or disseminated to the public any statement concerning that real or personal
  property that is untrue or misleading and known or should be known to be untrue
  or misleading; and
• prohibits any person from making or disseminating any untrue or misleading
  statement as part of a plan or scheme with the intent not to sell that personal
  property or those services at the stated or advertised price.  (Bus. & Prof. Code Sec.
  17500.)

<u>Existing law</u> provides that any violation of the FAA is a misdemeanor punishable by
imprisonment in the county jail not exceeding six months, or by a fine of $2,500, or by
both.  (Bus. & Prof. Secs. 17500, 17534.)

<u>Existing law</u> provides that any person who violates any provision of the FAA is liable
for a civil penalty not to exceed $2,500 for each violation that must be assessed and
recovered in a civil action by the Attorney General or by any district attorney, county
counsel, or city attorney.  (Bus. & Prof. Code Sec. 17536.)

<u>Existing law</u> provides that a person who has suffered injury in fact and has lost money
or property as a result of unfair competition may bring a civil action for relief.  (Bus. &
Prof. Code Sec. 17204.)

<u>Existing law</u> provides for injunctive relief, restitution, disgorgement, and civil penalties.
(Bus. & Prof. Code Secs. 17203, 17206.)

Exhibit 1
Page 2

SB 340 (Yee)
Page 3 of 7

<u>This bill</u> would require all printed marketing materials containing an offer with an automatic renewal term to comply with the following: the customer's agreement to the automatic renewal offer must be obtained in accordance with either (1) or (2) below so that the customer is given the opportunity to expressly consent to the offer:

1.          All automatic renewal offer terms must appear on the order form in immediate proximity to the area on the form where the customer selects the subscription or purchasing agreement billing terms or where the subscription or purchasing agreement billing terms are described; the order form must clearly and conspicuously disclose that the customer is agreeing to an automatic renewal subscription or purchasing agreement; and the automatic renewal offer terms must appear on materials that can be retained by the customer.

2.          Both of the following:
a.  on the front of the order form, the marketing materials must (i) refer to the subscription or purchasing agreement using the term "automatic renewal" or "continuous renewal," (ii) clearly and conspicuously state that the customer is agreeing to the automatic renewal, and (iii) specify where the full terms of the automatic renewal offer may be found; and
b.  the marketing materials must clearly and conspicuously state the automatic renewal offer terms presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or "Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require all marketing materials that offer an automatic renewal, when viewed as a whole, to clearly and conspicuously disclose the material terms of the automatic renewal offer and must not misrepresent the material terms of the offer.

<u>This bill</u> would require an automatic renewal to clearly and conspicuously describe the cancellation policy and how to cancel, including, but not limited to, a toll-free telephone number, if available, telephone number, postal address, or electronic mechanism on the Internet Web page or on the publication page of the printed materials.

<u>This bill</u> would require, in any automatic renewal offer made over the telephone, a business to clearly and conspicuously state the automatic renewal terms prior to obtaining a customer's consent and payment information.  The business must obtain a clear affirmative statement from the customer agreeing to the automatic renewal offer terms and must send a written acknowledgement that contains the toll-free number, if available, telephone number, postal address, or electronic mechanism for cancellation.

<u>This bill</u> would require, in any automatic renewal offer made on an Internet Web page, the business to clearly and conspicuously disclose the automatic renewal offer terms prior to the button or icon on which the customer must click to submit the order.  In any automatic renewal offer made on an Internet Web page where the automatic renewal terms do not appear immediately above the submit button, the customer must be required to affirmatively consent to the automatic renewal offer terms.  The automatic

(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 3

renewal terms must be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations,""Continuous Renewal Service Terms," or other similar description.

<u>This bill</u> would require, in any automatic renewal offer, a business to clearly and conspicuously state the automatic renewal offer terms and obtain the customer's affirmative consent to those terms before fulfilling any subscription or purchasing agreement on an automatic renewal basis and all marketing materials that offer an automatic renewal subscription or purchasing agreement must clearly and conspicuously display the cancellation policy and how to cancel.

<u>This bill</u> would provide that no business may represent that a product is "free" if the cost of the product is incorporated in the price of the accompanying item purchased under automatic renewal conditions.

<u>This bill</u> would provide that a violation of the bill's provisions would not be a crime, but all applicable civil remedies would be available.

<u>This bill</u> would define key terms, including "automatic renewal" and "automatic renewal terms."  (*See* Comment 4.)

**<u>COMMENT</u>**

1.  <u>Stated need for the bill</u>

The author writes:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

A widespread instance of these violations resulted in the 2006 Time, Inc. case, in which Time settled a multi-state investigation into its automatic renewal offers and solicitations.  The states launched their probe after receiving complaints from consumers that Time was billing them or charging their credit cards for unwanted magazine subscriptions.  The states' investigation found that these mail solicitations misled some consumers into paying for unwanted or unordered subscriptions.

Exhibit 1
Page 4

LEGISLATIVE INTENT SERVICE    (800) 666-1917

2. <u>Time's Assurance of Voluntary Compliance or Discontinuance (Assurance) with Attorneys General; SB 340 modeled after the Assurance</u>

The Attorneys General of 23 states (States), including California, investigated Time's automatic renewal subscription offers.  Time publishes over 150 magazines worldwide, including Time, People, Sports Illustrated, This Old House, Entertainment Weekly, Fortune, and Popular Science.  Time required customers to notify it if they did not want a subscription renewal; otherwise Time charged customers' credit cards or billed customers.  The automatic renewal terms replaced "the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election."  The States investigated:

> [W]hether the [automatic renewal] terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and, if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from an Automatic Renewal.  (Matters Investigated set forth in the Assurance.)

As a result of the investigation, in 2006, the States reached a settlement agreement – the Assurance – with Time.  In the Assurance, Time agreed to:
* provide clear and conspicuous disclosures to consumers concerning all the material terms for automatic subscription renewals and, for the next five years, provide consumers the option to affirmatively choose an automatic renewal option and Time will send those consumers who have chosen an automatic subscription renewal written reminders, including information on the right and procedure to cancel;
* honor all requests to cancel subscriptions as soon as reasonably possible and to provide refunds to consumers charged for magazines they did not order;
* stop mailing solicitations to consumers for subscriptions that resemble bills, invoices, or statements of amounts due; and
* not submit unpaid accounts of automatic renewal customers for third party collection.

Time also agreed to refund to customers up to $4.3 million, which included up to $828,463 to 20,238 eligible California consumers, approximately $41 per consumer. Senate Bill 340 is modeled in large part after the Assurance.

3. <u>Remedies available under the bill</u>

Senate Bill 340 would provide that a violation of its provisions would not be a crime, but all applicable civil remedies would be available.

(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 1
Page 5

Under the FAA, any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. Under the UCL, a private party may bring a civil action for injunctive relief and/or for restitution of profits that the defendant unfairly obtained from that party. However, the party must have suffered injury in fact and lost money or property.

4. <u>Key terms defined</u>

This bill would define the following key terms:
   a.  "Automatic renewal" would mean a plan or agreement in which a subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term.
   b.  "Automatic renewal offer terms" would mean the following clear and conspicuous disclosure:
- that the subscription or purchasing agreement will continue unless the customer notifies the business to stop;
- that the customer has the right to cancel;
- that the customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the customer, or chosen by the customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new automatic renewal term;
- the length of the automatic renewal term or that the renewal is continuous, unless the length of the term is chosen by the customer;
- that the price paid by the customer for future automatic renewal terms may change; and
- the minimum purchase obligation, if any.
   c.  "Clear and conspicuous" or "clearly and conspicuously" would mean a statement or  communication, written or oral, presented in a font, size color, location, and contrast against the background in which it appears, compared to the other matter which is presented, so that it is readily understandable, noticeable, and readable.
   d.  "Marketing materials" would include any offer, solicitation, script, product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment material, or any agreement for the sale or trial viewing of products that are delivered by mail, in person, television or radio broadcast, e-mail, Internet, Internet Web page, or telephone device, or appearing in any newspaper or magazine or on any insert thereto, or Internet link or pop-up window.

5. <u>Recording of telephone automatic renewal offers</u>

Assembly Bill 88 (Corbett, Ch. 77, Stats. 2003) incorporated into state law a rule adopted by the Federal Trade Commission intended to protect consumers from "abusive" telemarketing practices. The rule requires, among other things, that telemarketers make

Exhibit 1
Page 6

LEGISLATIVE INTENT SERVICE          (800) 666-1917

and maintain an audio recording of all telephone solicitations.  (Telemarketing Sales Rule, 16 C.F.R. Part 310, 310.4(a)(6)(i), and 310.5(a)(5), effective March 31, 2009.)

The author may want to consider requiring that telephone automatic renewal offers be audio recorded and that the recording be maintained.

6.  <u>Author's amendments</u>

On page 3, line 17, insert:
(c)  "Continuous renewal" means a plan or arrangement in which a subscription or purchasing agreement is continuously renewed until the customer cancels the renewal.

On page 3, line 19, delete (c) and insert (d).

On page 3, line 34, delete (d) and insert (e).

On page 3, line 36, delete (e) and insert (f).

On page 4, line 4, insert (f).

On page 4, line 5, insert:
(g) All automatic renewal provisions in this article shall apply to continuous renewals.


<u>Support</u>:  California Public Interest Research Group; Consumer Federation of California; American Federation of State, County and Municipal Employees; California Alliance for Consumer Protection

<u>Opposition</u>:  None Known

## **HISTORY**

<u>Source</u>:  Author

<u>Related Pending Legislation</u>:  None Known

<u>Prior Legislation</u>:  None Known

************

Exhibit 1
Page 7

LEGISLATIVE INTENT SERVICE          (800) 666-1917

Exhibit 2

Date of Hearing:  June 30, 2009

ASSEMBLY COMMITTEE ON JUDICIARY
Mike Feuer, Chair
SB 340 (Yee) – As Amended: June 24, 2009

PROPOSED CONSENT (As Proposed to be Amended)

SENATE VOTE:  37-0

SUBJECT:  AUTOMATIC RENEWAL AND CONTINUOUS SERVICE OFFERS

KEY ISSUE:  SHOULD A BUSINESS THAT MARKETS A PRODUCT WITH AN
"AUTOMATIC RENEWAL OFFER" BE REQUIRED TO CLEARLY AND
CONSPICUOUSLY DISCLOSE RENEWAL TERMS AND CANCELLATION POLICIES,
AND TO OBTAIN THE CUSTOMER'S AFFIRMATIVE CONSENT TO AN AUTOMATIC
RENEWAL?

FISCAL EFFECT:  As currently in print this bill is keyed non-fiscal.

**SYNOPSIS**

*This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to
protect consumers from unwittingly consenting to "automatic renewals" of subscription orders
or other "continuous service" offers.  According to the author and supporters, consumers are
often charged for renewal purchases without their consent or knowledge.  For example,
consumers sometimes find that a magazine subscription renewal appears on a credit card
statement even though they never agreed to a renewal.  Indeed, this problem led 23 state
attorneys general to launch an investigation of Time, Inc., in response to claims that the
company used deceptive practices in signing up customers for automatic subscription renewals.
As part of a settlement of this dispute, Time agreed to institute new practices so that customers
are fully aware of and affirmatively consent to automatic renewals.  This bill, following the lead
of the Times' settlement, would require that renewal terms and cancellation policies be clearly
and conspicuously presented to the consumer, whether the offer is made on printed material or
through a telephone solicitation.  In addition, the bill would require that the consumer make
some affirmative acknowledgement before an order with an automatic renewal can be
completed.  Finally, the bill specifies that violation of the bill's provisions do not constitute a
crime.  The author has worked closely with affected business interests and has made several
amendments that appear to address all stakeholders' concerns.  There is no registered
opposition to the bill.*

SUMMARY:  Requires any business making an "automatic renewal" or "continuous service"
offer to clearly and conspicuously, as defined, disclose terms of the offer and obtain the
consumer's affirmative consent to the offer.  Specifically, this bill:

1)  Makes it unlawful for any business making an automatic renewal offer or a continuous
    service offer to a consumer to do any of the following:

Exhibit 2
Page 8

(800) 666-1917

LEGISLATIVE INTENT SERVICE

SB 340
Page 2

   a)  Fail to present the offer terms in a clear and conspicuous manner, as defined, before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer.

   b)  Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service offer without first obtaining the consumer's affirmative consent.

   c)  Fail to provide automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.  If the offer includes a free trial, the business shall disclose how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

2)  Requires a business making automatic renewal or continuous service offers to provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the customer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the written acknowledgment.

3)  Specifies that in the case of a material change in the terms of an automatic renewal or continuous service offer that has been accepted by the consumer, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer.

4)  Specifies that the requirements of this bill shall only apply to the completion of the initial order for the automatic renewal or continuous service, except as provided.

5)  Provides that in any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service or automatic renewal, without first obtaining the consumer's affirmative consent, in the manner required by this bill, then the goods, wares, merchandise, or products shall be deemed an unconditional gift to the consumer, and the business shall bear any shipping or other related costs.

6)  Provides that violation of the provisions of this bill shall not be a crime, but that all civil remedies that apply to a violation may be employed.  Specifies, however, that if a business complies with the provisions of this bill in good faith, it shall not be subject to civil remedies.

7)  Exempts from the provisions of this bill any service provided by certain businesses or entities, including those regulated by the California Public Utilities Commission, the Federal Communication Commission, or the Federal Energy Regulatory Commission.

<u>EXISTING LAW</u>:

1)  Provides, under the Unfair Competition Law (UCL), that unfair competition includes any unlawful, unfair, or fraudulent business act or practice, including any unfair, deceptive, or untrue advertising, or any act prohibited by the False Advertising Act (FAA).  (Business & Professions Code Section 17200 *et seq*.)

2)  Prohibits any person with the intent, directly or indirectly, to sell any goods or services by making or disseminating statements that the person knows, or should know, to be untrue or misleading, and prohibits any person from making or disseminating any untrue or misleading

Exhibit 2
Page 9

LEGISLATIVE INTENT SERVICE   (800) 666-1917

statement as part of a plan or scheme to sell goods or services at other than the stated or advertised price.  (Business & Professions Code section 17500.)

3) Provides that any violation of the FAA is a misdemeanor.  (Business & Professions Code sections 17500, 17534.)

4) Provides that any person who violates any provision of the FAA is liable for a civil penalty not to exceed $2,500 for each violation that must be assessed and recovered in a civil action by the Attorney General or by any district attorney, county counsel, or city attorney. (Business & Professions Code section 17536.)

5) Provides that a person who has suffered injury in fact and has lost money or property as a result of unfair competition may bring a civil action for relief.  (Business & Professions Code section 17204.)

6) Provides for injunctive relief, restitution, disgorgement, and civil penalties for FAA violations.  (Business & Professions Code sections 17203, 17206.)

<u>COMMENTS</u>:  This non-controversial bill is a response to reported consumer complaints that certain businesses, especially those offering magazine subscriptions or other potentially continuous services, lure customers into signing up for "automatic renewals" without the consumer's full knowledge or consent.  This bill seeks to address this problem by requiring clear disclosures and affirmative acts of customer consent.  The author states:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to.  Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card.  These unforeseen charges are often the result of agreements enumerated in the 'fine print' on an order or advertisement that the consumer responded to.  The onus falls on the consumer to end these product shipments and stop the unwanted charges to their credit card.

As noted in the author's background material, this bill was prompted in part by an investigation brought by the attorneys general of 23 states, including California, against Time, Inc.  The investigations found that subscribers to several magazines published by Time, Inc. were discovering that their subscriptions were automatically renewed even though the customers claimed that they had never knowingly consented to the renewals.  In 2006, the investigation resulted in a settlement agreement between the Attorneys General and Time that requires Time to more clearly disclose renewal terms and ensure that the consumer take some affirmative step to acknowledge consent or rejection of the automatic renewal offer.  According to the author, the specific disclosure and consent requirements in this measure are modeled after, though not identical to, those set forth in the Time settlement.

<u>ARGUMENTS IN SUPPORT</u>:  According to the California Public Interest Research Group (CALPIRG), "this bill will help ensure that consumers only get into an ongoing subscription if they want to."  According to the Consumer Federation of California, this measure will curb deceptive marketing practices that are used to sell everything from magazine subscriptions to "free trial" offers that lock consumers into an ongoing purchase agreement.  Supporters generally



(800) 666-1917

LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 10

contend that this is a straightforward measure reflecting the basic premise that consumers deserve to know the terms and conditions to which they are agreeing.

<u>Author's Technical Amendments</u>:  The author wishes to take the following technical and clarifying amendments:

- On page 4 after line 9 insert:

*(e) "Consumer" means any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes.*

- On page 4 line 32 and on page line 16 change "customer" to "consumer"

<u>PRIOR LEGISLATION</u>:  AB 88 (Chapter 77, Stats. of 2003) provides that a contract for a good or service that is made in connection with a telephone solicitation is unlawful if the telemarketer is in violation of a recent Federal Trade Commission (FTC) rule requiring that the seller obtain specified information and express consent directly from the consumer and, under certain circumstances, maintain a recording of the call.  (This present bill would similarly require that automatic renewal offers made over the telephone comply with federal telephonic marketing regulations.)

<u>REGISTERED SUPPORT/OPPOSITION</u>:

<u>Support</u>:

California Alliance for Consumer Protection
California Public Interest Research Group (CALPIRG)
Consumer Federation of California

<u>Opposition</u>:

None on file

<u>Analysis Prepared by</u>:   Thomas Clark / JUD. / (916) 319-2334



(800) 666-1917          LEGISLATIVE INTENT SERVICE

Exhibit 2
Page 11

Exhibit 3



Exhibit 3
Page 12

Exhibit 4



Exhibit 4
Page 13

Exhibit 5



Exhibit 5
Page 14

Exhibit 6

 Steven S

★☆☆☆☆                                                                08/17/2023

I tried it one time never used it again not even on my computer anymore I find out 3 years
later they've been charging me every year 20 some dollars now all of a sudden this year
it's almost $84 I want my money back I don't even use this product They get a -1000 stars
from me Had to get a hold of PayPal to make sure they cannot Bill me anymore I still want
my money back



**Avanquest Software Response**                                        08/18/2023

Dear BBB,
I have searched our customer database for the name or email address, and it failed to find
any matches. If I could locate the customer, I would be happy to refund the full purchase
price of the software.

Exhibit 6
Page 15

Exhibit 7

**Complaint Type:**
Problems with Product/Service
**Status:**
Resolved 

 **Initial Complaint**
06/05/2023

I have not authorize any withdrawal from my bank account to Avanquest Software. They have charged my account $97.00! I demand a refund!

**Business response**
06/06/2023

The customer was charged for the renewal of Soda PDF *********.

The renewal amount of 97.90 USD was refunded.
I spoke to Mrs. ******* and explained to her that we have refunded her credit card $97.90.

Exhibit 7
Page 16

Exhibit 8

**Complaint Type:**
Problems with Product/Service
**Status:**
Resolved ❓



**Initial Complaint**
03/17/2023

I purchased photo software from their iNPixio company 02/25/2023, Confirmation Number: U*****Z4, Purchase Date: 2/25/2023 8:26:13 PM, Total: $45.99. Then a few days later I received a notice that they had a upgrade for the software that I had purchased, claiming that the upgrade would make it Much Faster and Better. So I decided to give it a try. So, on Purchase Date: 3/9/2023 4:25:44 PM, Confirmation Number: U******D, Total: $49.98 which was suppose to only be $39.99 but they added on a $9.99 fee so I could load the software on addition** computers. As soon as I noticed the overcharge I requested a refund for the $9.99 which they ignored. They then were pushing me to agree to pay more money for future use of product. I told then, before I spend more money I'm going to try the update to see if it works any better than my origin** purchase. Well, the update didn't make any improvement and I requested a refund for the $49.98. Their customer response was "We'll Get Back to you within 24hrs" However they didn't and I keep asking and they keep ignoring my request. These people are SCAMMERS. I want my REFUND!!! I'm attaching a document showing their delay tactics. I'm a 75 year old senior and can't afford to lose money like this. Please Help. Sincerely ** ******



**Business response**
03/20/2023

Dear *****,

I am sorry to hear about the difficulties you have been experiencing with our company, and I understand your frustration. As a valued customer, your satisfaction is our top priority, and we take your concerns very seriously.

Exhibit 8
Page 17

Please accept our apologies for any delay in getting back to you. We strive to respond to all customer inquiries within 24 hours, but it seems we fell short in your case. We will make sure to investigate this issue and take appropriate measures to prevent it from happening again in the future.

Regarding your refund request, I would like to assure you that we are committed to resolving this matter to your satisfaction. We have reviewed your account and confirmed that you are eligible for a refund of the $9.99 Edit photos on up to 5 PCs!- 1 Year option and well of the for inPixio Photo Studio Ultimate - 1 Year for 39.99, and we have initiated the refund process. The funds should be returned to your account within 3-5 business days.

Once again, please accept our apologies for any inconvenience caused, and please do not hesitate to contact us if you have any further questions or concerns. We value your business and appreciate your patience and understanding.

 **Customer response**
03/24/2023

Better Business Bureau:

I have reviewed the response made by the business in reference to complaint ID 19****79, and find that this resolution is satisfactory to me.
Provided that they actually send the refund. Haven't received it yet but I know the banks hold our money before they send it.

Exhibit 8
Page 18

Exhibit 9

**Complaint Type:**
Problems with Product/Service
**Status:**
Answered ❓



**Initial Complaint**
08/13/2022

date 8/10.2022 AVG-software charge 29.99 and 39.99 on same date for software I didnot want. and it says reoccuring charge. I would like to get my money back if possible and stop this crap from happening again. I see you have helped someone else with this same issue. Recurring Withdr avq-software.com 188-******** VA Date 08/10/21 080682 5817 ACCOUNT CHECKING ACCT *0***-0071 CATEGORY Uncategorized AMOUNT - $39.98 Next one.... Recurring Withdr avq-software.com 188-******** VA Date 08/10/22 034153 5817 ACCOUNT CHECKING ACCT *0***-0071 CATEGORY Uncategorized AMOUNT - $29.99 Thanks for any help you can do. ******* ****** *********2



**Business response**
08/15/2022

Hi *******,

Thank you for your email. I would be happy to help.

According to our records, you have purchased the software called inPixio Photo Studio Pro - 1 Year

https://www.inpixio.com/photo-studio/

Please be informed that during the initial purchase of trhis software on 8/10/2021 1:05:54 PM, you agreed to the Electronic Fund Transfer Authorization

https://store.inpixio.com/Legal.aspx?p1=JLQy4aoyoVM%3D&p3=%2F0x4zndRSo0%3D&p4=DmYSD18sR28%3D

According to it, your subscription plan has an automatic renewal service, which means that your account will automatically renew at  an yearly interval.

Exhibit 9
Page 19

This service is designed to save you time, effort, and risk by extending your subscription automatically before it expires.

Please note that for the subscriptions purchased through the official website, canceling a subscription does not result in a refund for any previous subscription charges. Right now, you can continue to use the features of your subscription following cancellation until the end of your billing period. You will not be charged again unless you reactivate your subscription.

As requested by you, I have processed the refund in the amount of 29.99 USD to your Visa*** **** and it should reflect in your bank account in 5-7 business days.

You will also get a confirmation email regarding this refund within the next 24 hours; please make sure to check your Junk, Bulk, or Spam folders if you do not see this email within this period.

If your refund has not appeared within 7 business days, please contact us and we will do our best to provide you with additional information on the status of your refund.

I'm sad to see you go, but I hope that we could work together in the future when our products will be useful for you or your business.

Regards!

Exhibit 9
Page 20

Exhibit 10



**John I**

⭐☆☆☆☆

07/17/2022

This company does not even deserve one star. The software does not work as described. Even though, the company boasts of a policy of easy refund if the software does not work; once your money gets into their pocket, you cannot get it back. Trying to contact this company either by their own given email or by their telephone number is like going into a rabbit hole with a warren of interconnecting tracts. All the emails I sent to this company came back as daemon mails. All telephone calls for refund were being transferred from one person to the another until there is no more response. If this company does really exist, it must be a fraud. Time will catch up with it and it will financially disappear. My advice to would be customers; please avoid this company completely and do not let them steal your money. I do have all my receipts to prove what I am saying and I therefore challenge this company to contest my story and I will then post all the return daemon emails and the receipts of my purchases. **** ******* *** ***** ****** DR ** *****

Exhibit 10
Page 21

Exhibit 11

**Complaint Type:**
Problems with Product/Service
**Status:**
Answered 

 **Initial Complaint**
07/07/2022

July 7, 2022 AVQ Software charge 43.29 to my account. I need that money back. It was for inpixio and I know I cancelled that subscription last month. It was still showing active though. I know I cancelled it tonight and I want a refund.

 **Business response**
07/13/2022

Hi there,

please find the rfund confirmation attached.

Regards!

Exhibit 11
Page 22

Exhibit 12

**Complaint Type:**
Billing/Collection Issues
**Status:**
Answered ❓



**Initial Complaint**
07/02/2022

An ACH debit appeared as a transaction yesterday (07/01/2022) on my checking account record. The descriptor reads," POS PURCHASE avq-software.com 188-******** VA 00000*** ***763." The amount is $29.99. Quick online research showed this is some sort of subscription service with a shaky reputation. Since I was sick in bed yesterday and did nothing using the internet, I concluded this is some sort of scam. I've never heard of this company and certainly did not sign up for any service from them. I'm seeking an immediate refund.



**Business response**
07/05/2022

Hi there,

Thank you for request. I will be glad to assist you with the billing inquiry.

According to our records, KarenEvans has an active subscription for inPixio Photo Studio program, initially purchased on Jul 1 2021. As it is a yearly subscription, and the customer was charged on Jul 1 2022 to renew your license and keep the service active.

Your order ID for this purchase is: UQ*****R

Please note that our company sends an automatic email with the price, terms, and related details of the upcoming renewal 30 days before it takes place. Please make sure to check your Junk, Bulk or Spam folders if you did not receive this email.

Refund has been already initiated, customer will get the refund confirmation within 24-48 hours.

Exhibit 12
Page 23

Exhibit 13



jeanie w

⭐☆☆☆☆

*06/03/2022*

This software is a joke! Don't buy! On initial purchase it automatically renews and you get charged again within a few. Its impossible to apply for a refund because the form you complete promising to remove software goes nowhere -- the email address provided is bogus!

Exhibit 13
Page 24

Exhibit 14

**Complaint Type:**
Billing/Collection Issues
**Status:**
Answered 

 **Initial Complaint**
11/25/2021

I ordered and used InPixio product for a year. No longer needed or used the product. Item I didn't recognize showed up on Visa bill. Contacted Avanquest on November 7th 2021 to advise that I hadn't renewed or been advised of renewal. I was told that I had been notified before renewal. News to me. End result was that my contract was cancelled (I still have that email). I just got my new visa bill & it is on there again and now I can no longer seem to be able to contact this company!

**Business response**
12/09/2021

Hi \*\*\*\*\*\*,

Thank you for your complaint.

According to our records you have purchased the inPixio software on 11/7/2019.

All paid subscriptions to inPixio software are automatically enrolled in the Auto-Renewal program as described during the initial purchase. Please note that this service keeps your software current with the latest program updates and enhancements. It automatically charges the current renewal subscription fee (plus applicable taxes) to your credit or debit card before your license expires so that you do not experience a service disruption.

Our company sends you an automatic email with price, terms, and related details of the renewal before we charge you so that you know it is coming.

Enrollment in Automatic Renewal Service is 100% optional. We provide Automatic Renewal Service to help you save you time and money, but there are some occasions where you might only want to purchase a 1-year license of our software. During these occasions, you can easily opt-out of Automatic Renewal Service within the shopping cart before purchasing and submitting your order, or you can cancel the service any time during the billing cycle.

Exhibit 14
Page 25

According to our records, you have contacted the customer service on Novemeber 7 and confirmed that you have had the service before but no longer using it. You mentionned that you hadnt authorize the auto-payment. Please review the attached screenshot from the checkout page where the terms of the sale are described. Clicking on button Process Payment you accept the terms of the sale. As you have contacted us after the recurring payment date our customer service agent has cancelled the software subscription for you.

Please note that canceling your subscription stops all future billing renewals, but does not result in a refund of your existing product. You will still have access to the product until it expires.

Let me know if you have any questions or concerns.

Sincerely,

****

Customer Success Specialist



**Customer response**
12/09/2021

**I am rejecting this response because: The notice of renewal was emailed @ 6am & because I no longer was interested in the product -went to junk mail. They assume I received the notice & complied. I understand that they have agreed to a non-renewal of this product but I DO NOT want to pay for a negative billing process to which I did not agree. I di not want to receive any further charges for this product. Period! Thank you**
****** ******

Exhibit 14
Page 26

Exhibit 15



Jan B
⭐☆☆☆☆                                                                    09/27/2020

Dealing with Avanquest has been a real nightmare. They put me in their software automatic renewal program without my knowledge or permission. I looked on my computer and I've never even ever downloaded any of their software programs. After about 10 requests and numerous phone calls to PayPal, my bank and Avanquest's 3 companies, I've almost given up ever getting a refund from Avanquest, IPixio or Upclick. To make matters worse, they automatically put me in their email spamming program when I first asked for a refund a month ago. So now I get unsolicited emails every day from one of their companies called Upclick, which is where they send you to in order to ask for a refund. I'm not mad. I just want to warn people about this company. If I ever get a refund from them, I will of course be happy to update this review :)



**Avanquest Software Response**                                            09/28/2020

Company Response: We apologize for any inconvenience, but with the information provided, this order was purchased through upclick.com / software-uc.com which sells our software and is an authorized seller for us. However, we do not have access to their system and they do not have access to ours. customers who purchased from upclick.com / software-uc.com you will need to contact them directly. Please see below on how to contact Upclick for support or refunds. Upclick – ###-###-#### *******@avanquest.zendesk.com

Exhibit 15
Page 27

Exhibit 16

 **J. Wright**

 1 review  ⊙ US

★★★★★                                                    Jun 3, 2022

### Don't even buy this software

Don't even buy this software. Useless! It automatically signs you up for renewal and its impossible to get your money back. They act like it is an easy process completing a destruction form, but the email address is bogus and can't be delivered. So much for a refund

**Date of experience:** June 03, 2022

👍 Useful    ⊰ Share                                                          ⚑

> ↳ **Reply from Avanquest Software**                          Jun 3, 2022
>
> Hello J. Wright,
> Thank you for letting us know that you would like to cancel your order. We can certainly help you.
> We have sent a request for your contact information. Please answer our request and we will help you with your refund request.

Exhibit 16
Page 28

Exhibit 17



**Meredith**



2 reviews   ⊙ US

★ ☆ ☆ ☆ ☆                                                        Jan 28, 2021

### Not happy

Not happy, with service. They told me they would give a refund on a reoccurring charge then would not give it too me. They give no notice on their charges. They just bill.

**Date of experience:** January 28, 2021

👍 Useful    ⤙ Share                                                    ⚑

↪ **Reply from Avanquest Software**                               Feb 16, 2021

Hi Meredith,
I am sorry if you were caught off guard by our billing. We always send a notification about upcoming renewal so you can decide if you want to cancel your subscription or leave it. I am sorry but as you have not left any refences to your order I cant check your cancellation request. Please contact our customer support to get assistance with your request: https://avanquest.zendesk.com/hc/en-us/requests/new

Exhibit 17
Page 29

Exhibit 18



**Ulises Jaq**
New Orleans, Louisiana, United States

⋮

## No ability to speak to a person; but perfectly able to take my money automatically

May 08, 2023        **1.0**

Legends dishes *** Jed HD had he of a J.D. Jeff he or he had he he he he Va mercenaries uttered scenes scandals

**Preferred solution:**  Full refund

    

**1 comment**

    **InPixioCares**
May 09, 2023

Hello, Thanks for sharing that you want to get in touch with us. You can call us at one of these numbers: https://***/contact.aspx You can also communicate with our agents in the live chat or submit a request.



Exhibit 18
Page 30

Exhibit 19

 **Sally C Aic**
Verified Buyer  |  Verified Reviewer  |  Fort Worth, Texas, United States

⋮

## Cancel subscription

Aug 04, 2022      **1.0**



Keep getting charged and have cancelled subscription. I need to talk to a customer service. Need help need help need help need help need hellp

**Loss:** $28

**Cons:** No free support for newly purchased product
Bad service communication

**Preferred solution:**  Full refund

**Comment**    👍 **Helpful**

Exhibit 19
Page 31